## IN RE DONNA M.*
## (12537)

FOTI, HEIMAN and SPEAR, Js.

Argued December 13, 1993—decision released February 22, 1994

*Helen M. Doherty,* for the appellant (respondent mother).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Maureen A. Chmielecki,* the appellee (petitioner), for the minor child.

*Paul J. Bakulski,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (department of children and families).

*Matthew J. Collins,* for the appellee (respondent father).

HEIMAN, J. The respondent mother appeals from the judgment of the trial court adjudicating her child neglected and committing the child to the custody of the department of children and youth services (DCYS).[1] On appeal, the respondent mother claims, in part, that the trial court improperly (1) overruled her objection to commencing trial before an amended petition was filed identifying alleged acts of misconduct committed by her, in light of the court's ruling that such amendment was to be allowed, (2) overruled her objection to commencing testimony relative to misconduct by her until the amended petition was filed, (3) allowed a mid-trial amendment to the neglect petition, (4) ordered a psychological evaluation of the parties and the minor child on April 21, 1992, and (5) denied her request for blood testing. We reverse, in part, the judgment of the trial court.[2]

---

[1] The department of children and youth services was renamed the department of children and families. Public Acts 1993, No. 93-91, § 1.

[2] The respondent mother also claims that the trial court improperly (1) denied her request for a continuance pending completion of the evaluation ordered on April 21, 1992, (2) granted an order of temporary custody, (3) denied her motion to dismiss the order of temporary custody, (4) relied on opinion evidence of the court-appointed evaluator as to the credibility of the parties and the child, (5) accepted, after opening her case-in-chief, a stipulation offered by counsel and closed the proceedings in spite of her statements to the court that she desired new counsel and wanted to offer additional evidence, (6) denied her motion for recusal based on receipt of ex parte communications, and (7) denied her the right to effective assist-

The trial court found the following facts. The respondent parents were married on February 29, 1988. One child, born June 21, 1989, was issue of the marriage. The marriage was terminated on February 13, 1991, after claims by the mother of family violence and sexual abuse by the husband. The divorce decree granted sole custody of the child to the mother subject to the father's reasonable rights of visitation.

On March 7, 1991, the mother claimed that the father had sexually abused the child during an unsupervised visit. The mother took the child to Kimberly Mailloux, a child advocate and certified sexual assault counselor employed by the Northeast Connecticut Sexual Assault Crisis Service, and Morton Glasser, a physician in general and family practice, for examination and evaluation. The police, DCYS and Martha Roberts, a counselor and clinician employed by United Services who became the child's therapist, were also notified. The father's visitation rights were modified to allow only supervised visitation until the end of January, 1992, when the father was allowed to resume unsupervised visits for a few hours a week.

On June 6, 1991, an attorney for the minor child filed a petition seeking a determination of neglect pursuant to General Statutes § 46b-129[3] and requesting that the court take appropriate action. The petition was

---

ance of counsel. We will not address those issues because our disposition of the issues enunciated in the text requires a new trial and the issues we do not address are not likely to recur on retrial or are moot.

[3] General Statutes § 46b-129 (a) provides in pertinent part: "[A] child or his representative or attorney . . . having information that a child or youth is neglected, uncared-for or dependent, may file with the superior court which has venue over such matter a verified petition plainly stating such facts as bring the child or youth within the jurisdiction of the court as neglected, uncared-for, or dependent, within the meaning of section 46b-120, the name, date of birth, sex, and residence of the child or youth, the name and residence of his parents or guardian, and praying for appropriate action by the court in conformity with the provisions of this chapter. . . ."

premised on an allegation that the father had sexually abused the child. DCYS filed a motion to amend the child's petition on December 13, 1991, to include allegations of neglect against the mother.

On February 21, 1992, after the first full day of the child's unsupervised visit with the father, the mother again reported that the father had sexually abused the child. The mother again took the child to Mailloux and Glasser for evaluation and examination, and the police and DCYS were informed. Again, the father's visitation rights were modified to supervised visitation only.

On April 21, 1992, the hearing commenced on the June 6, 1991 neglect petition. At that hearing, DCYS withdrew its motion to amend the petition and the child's attorney requested permission from the trial court to amend the neglect petition. The court granted the motion to amend and the child's attorney informed the court that the amended petition would be filed on April 23, 1992. The court then asked the child's attorney to call her first witness. The mother objected to the commencement of evidence prior to the filing of the amended petition. The trial court overruled the objection and commenced trial. The child's attorney did not file the amended petition on April 23, 1992.

On May 26, 1992, at the mother's request, her then prospective mother-in-law took the child to DCYS for the father's regularly scheduled visit. Diane Sinapi, a DCYS social worker, informed the prospective mother-in-law that the child would be released only to her mother after the visitation. The mother, at that time, had accompanied her fiance to Putnam Superior Court for proceedings concerning her fiance's marital status.

When the mother failed to come to the DCYS office to pick up the child before the office closed, Sinapi released the child to the father and the child's paternal grandmother. The grandmother drove to her home

with the child. The grandmother's home was located approximately forty-five minutes from the DCYS office. About forty-five minutes after the grandmother had arrived at home, the mother retrieved the child. The mother immediately reported another instance of claimed sexual abuse by the father. Again, the child was brought to Mailloux and Glasser for evaluation and examination and the police and DCYS were notified.

On July 17, 1992, the attorney for the child filed an amended petition for a determination of neglect alleging that the child was neglected, abused, denied proper care and attention, permitted to live under conditions, circumstances or associations injurious to her well-being and was uncared for in that her home could not provide the specialized care that her physical, emotional and mental condition required. The amended petition had matters stricken and a new amended petition was filed on July 21, 1992. The new petition was premised on allegations that the father had sexually abused the child, and, in the event that the allegations of sexual abuse by the father were not true, that the mother was abusing the child by intentionally or otherwise fabricating false claims of sexual abuse, thereby exposing the child to unnecessary and intrusive examinations. The mother objected to the amendment because the trial was in an advanced stage. The trial court overruled the objection and stated that Practice Book § 1029 (now § 1055.1 [3])[4] allowed the amendment. Both parents were represented by counsel and entered denials of the petition.

[4] At the time the petition was filed, Practice Book § 1029 provided: "A petition may be amended at any time by the court on its own motion or in response to the motion of any interested party prior to the final adjudication of delinquency or neglect. When an amendment has been so ordered, a continuance shall be granted whenever the court finds that the new allegations in the petition, as amended, justify the need for additional time to permit the parties to respond adequately to the additional or changed facts and circumstances."

That section became Practice Book § 1055.1 (3) effective October 11, 1993.

On December 16, 1992, the trial court found that the mother's claims of sexual abuse by the father were untrue. The trial court further found that the acts of the mother were intentional in falsely reporting the sexual abuse thereby obstructing and interfering with the father's relationship with the child, and that those actions constituted neglect and abuse on the part of the mother. On the basis of those findings, the trial court ordered that the child be committed to DCYS for a period of eighteen months. The trial court further ordered that the father be instructed and counseled on parenting and that he receive progressively increased visitation with the child in the paternal grandmother's home. The trial court also ordered that the mother have supervised visitation rights of no more than two hours per week. The mother appeals from that judgment.

I

The mother claims that the trial court improperly (1) commenced trial prior to the filing of the amended petition identifying alleged misconduct on her part, in light of the court's ruling that such amendment was to be allowed, (2) permitted evidence relative to acts of her misconduct prior to the filing of the amended petition, and (3) allowed a midtrial amendment to the neglect petition. The mother asserts that the trial court violated her right to due process of law by failing to give her adequate notice of the claims directed against her. We agree.

"The State has a parens patriae interest in preserving and promoting the welfare of the child, *Santosky* v. *Kramer,* 455 U.S. 745, 766, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) . . . ." (Internal quotation marks omitted.) *In re Steven G.,* 210 Conn. 435, 440, 556 A.2d 131 (1989). We must, therefore, strike a balance between the informality and flexibility that characterize juvenile proceedings with the requirement of fun-

damental fairness demanded by due process. *Schall* v. *Martin,* 467 U.S. 253, 263, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984); *Lehrer* v. *Davis,* 214 Conn. 232, 240, 571 A.2d 691 (1990); *In re Steven G.,* supra, 440–41. Due process requires notice that would be deemed constitutionally adequate in a civil or criminal proceeding. *In re Gault,* 387 U.S. 1, 33, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). "Notice is not a perfunctory act in order to satisfy the technicalities of a statute, but has, as its basis, constitutional dimensions." *In re Baby Girl B.,* 224 Conn. 263, 295, 618 A.2d 1 (1992). "Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." (Internal quotation marks omitted.) *In re Gault,* supra; *In re Steven G.,* supra, 441; *In re Michael M.,* 29 Conn. App. 112, 119, 614 A.2d 832 (1992). The fact that the parties may have had knowledge that misconduct will be alleged against them does not excuse the requirement of actual adequate notice. *In re Gault,* supra, 34 n.54. The purpose of notice is to clarify the issues being considered. Id.[5]

In compliance with the requirements of due process, our rules require that the neglect petition set forth with "reasonable particularity" specific allegations that have resulted in the neglect of the child. Practice Book § 1027 (4) (now § 1040.1 [1]).[6] The rules also allow the

---

[5] While *Gault* does not specifically address midtrial amendments to allegations in a neglect proceeding, "it does provide us with a basic standard of essential due process and fair treatment." *In re Steven G.,* 14 Conn. App. 205, 209, 540 A.2d 107 (1988), aff'd, 210 Conn. 435, 556 A.2d 131 (1989). "As the court observed in *Gault,* 'juvenile Court history has . . . demonstrated that unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure.' *In re Gault,* supra, 18 . . . ." *In re Tyvonne M.,* 211 Conn. 151, 164, 558 A.2d 661 (1989).

[6] At the time the petition was filed in this case, Practice Book § 1027 (4) provided: "If jurisdiction over the child is alleged to arise out of neglect,

trial court to permit amendments to the neglect petition during the trial. Practice Book § 1029.[7] Amendments to the petition, however, cannot be of such a nature as to violate the parties' constitutional rights to notice of the allegations against them. *In re Steven G.,* supra. We apply a "fundamental fairness" analysis in determining whether the midtrial amendment allowed by Practice Book § 1029 violated the mother's constitutional rights. Id.

The amendment was first filed on July 17, 1992, after a significant amount of evidence had been produced at trial.[8] By the time of the amendment, the child's attorney had called five witnesses and the mother had called five witnesses.[9] Further, the original petition was not accompanied by factual allegations of neglect by the mother; cf. *In re Michael M.,* supra, 120; and the amendment changed the basic nature of the offense alleged in the original petition. Cf. *In re Steven G.,* supra. The amendment also did not occur near the beginning of the trial. Cf. *In re Carl O.,* 10 Conn. App. 428, 437, 523 A.2d 1339, cert. denied, 204 Conn. 802, 525 A.2d 964 (1987). Therefore, the amendment of the neglect petition was not fundamentally fair and we thus conclude that it violated the mother's due process right.

The child's attorney claimed during oral argument that the mother had waived her due process rights by

the petitioner must set forth with reasonable particularity the specific instances, acts, or conditions which he contends have resulted in the neglect of the child in question." That section became Practice Book § 1040.1 (1), effective October 1, 1993.

[7] See footnote 4.

[8] The trial court held hearings on this matter on five occasions before the amendment was first brought to the attention of the court. The court held seven more hearings after the amendment.

[9] The mother called witnesses to respond to the single issue of the order for temporary custody. The court and the parties agreed that the evidence from the issue of temporary custody would be used as part of the issue of the neglect petition.

agreeing on June 16, 1992, to have the evidence that was introduced on the issue of temporary custody considered on the neglect petition.[10] "The waiver of a constitutional right is effective only if, under all the circumstances, it was knowingly, voluntarily and intelligently given." *State* v. *Smith,* 185 Conn. 63, 86, 441 A.2d 84 (1981). The transcript does not support the claim of waiver. The mother could not intelligently waive her rights at that time. She was unaware of the allegations of the amended petition and did not know whether the amended petition would be filed. The record reflects that the child's attorney did not file the amended petition until July 17, 1992. Therefore, the mother agreed only to allow the evidence from the temporary custody issue to be used for the issue of the neglect petition that alleged wrongdoing by only the father.

## II

Although our disposition of the previous issue requires a new trial, we address the issue of whether the trial court improperly ordered the mother to undergo a psychological evaluation on April 21, 1992, and then allowed the report of the examination to be admitted at trial because it is likely to recur at retrial.

Certain additional facts are necessary for a proper resolution of this issue. The mother alleged sexual abuse of the child by the father on March 7, 1991. After the child's attorney filed the petition for a determination of neglect on June 6, 1991, the court ordered that psy-

---

[10] The transcript reflects the following:

"The Court: All right. It's still understood by all parties and counsel that all of this evidence will be used as part of the case-in-chief and I'm trying this case together with the temporary custody application. Is that everybody's agreement and understanding?

"All: Yes, Your Honor."

chological tests be administered by David Mantell, a licensed clinical psychologist, on the mother, father and child. On the basis of the report, the court ordered that the father have only supervised visitation rights. The trial court had scheduled a trial on the petition for December 17, 1991. On that date, the trial was continued to April 21, 1992. On February 21, 1992, the mother again alleged that the father had sexually abused the child. On April 21, 1992, the court ordered a second psychological evaluation of all of the parties in view of the further allegations of sexual abuse. Mantell asked to have access to the reports of seven professionals, to talk with the parties and to talk with relatives of the parties. All of the parties agreed to the second evaluation.[11] On July 17, 1992, the child's attorney filed an amended petition alleging abuse by the mother. Another amended petition was filed on July 21, 1992. The report based on the evaluation was admitted into evidence on July 21, 1992, without objection.[12] On appeal, the mother claims that the ordering of the evaluation (1) violated General Statutes § 46b-129 (c), which

---

[11] The transcript reflects the following colloquy among the parties and the court:

"The Court: All right. Fine. Now any objection to Dr. Mantell having access to the seven professionals and their reports? Attorney McKenna?

"[Assistant Attorney General]: No objection, Your Honor.

"The Court: Attorney Chmielecki?

"[Counsel for minor child]: None whatsoever, Your Honor.

"The Court: Attorney Collins?

"[Counsel for respondent father]: No, Your Honor.

"The Court: Attorney Tuller?

"[Counsel for respondent mother]: No, Your Honor.

"The Court: All right. So ordered."

[12] The transcript reveals the following colloquy among the parties and the court:

"[Counsel for minor child]: Doctor, I would show you this document and ask you please to identify it.

"[Mantell]: Yes, this is most the recent study that I prepared for the court. It's 117 pages long and it's dated July 16, 1992.

"[Counsel for minor child]: And that is your signature on the last page of the document?

denied her due process of law, and (2) constituted plain error. We are unpersuaded.[13]

A

General Statutes § 46b-129 (c)[14] provides that the trial court may order a physical or mental examination of the parents only after a hearing on the petition for neglect and a finding that the physical or mental ability of the parent to care for the child is at issue. Although the statute seems to connote a compulsory procedure by requiring a hearing and finding by the court, we have held that such statutory schemes are not mandatory but directory. See *In re Adrien C.,*

"[Mantell]: Yes. it is.

"[Counsel for minor child]: Your Honor, I would request that this be admitted as a full exhibit marked Petitioner's No. [9].

\* \* \*

"The Court: Counsel?

"[Assistant Attorney General]: No objection.

"[Counsel for respondent father]: No objection.

"The Court: Attorney Thompson?

"[Counsel for respondent mother]: I have no objection, Your Honor."

[13] The mother also claims that the trial court denied her due process of law because she was unaware of the allegations brought against her in the amended petition. We do not review this issue because the mother did not adequately preserve the issue for review. The mother did not object when the evaluation was ordered or to the admission of the report when she was aware of the claims in the amended petition. See *State* v. *Lizotte,* 200 Conn. 734, 742A, 517 A.2d 610 (1986); *Budlong* v. *Nadeau,* 30 Conn. App. 61, 63–64, 619 A.2d 4, cert. denied, 225 Conn. 909, 621 A.2d 290 (1993).

[14] General Statutes § 46b-129 (c) provides: "When a petition is filed in said court for the commitment of a child or youth, the commissioner of children and youth services shall make a thorough investigation of the case and shall cause to be made a thorough physical and mental examination of the child or youth if requested by the court. The court after hearing on the petition and upon a finding that the physical or mental ability of a parent or guardian to care for the child or youth before the court is at issue may order a thorough physical or mental examination, or both, of the parent or guardian whose competency is in question. The expenses incurred in making such physical and mental examinations shall be paid as costs of commitment are paid."

9 Conn. App. 506, 510, 519 A.2d 1241, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987). "We determine whether a statute is mandatory or directory by testing whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Citations omitted; internal quotation marks omitted.) *Brown* v. *Smarrelli,* 29 Conn. App. 660, 664, 617 A.2d 905 (1992), cert. denied, 225 Conn. 901, 621 A.2d 284 (1993); *In re Adrien C.,* supra. "Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." (Internal quotation marks omitted.) *Rowe* v. *Godou,* 12 Conn. App. 538, 543, 532 A.2d 978 (1987), rev'd on other grounds, 209 Conn. 273, 550 A.2d 1073 (1988); *In re Adrien C.,* supra, 510–11. The party challenging the action of the trial court must object in a timely manner or waive the right to do so. *In re Adrien C.,* supra, 511.

The requirement of a hearing and finding by the court is directory. It does not relate to a matter of substance, but is designed to secure order in the proceedings. Its purpose is to afford the objecting party a procedure for challenging a court ordered examination. If the party elects not to object, the court is not required to hold a hearing as a matter of law. Therefore, by her failure to object to the ordering of the psychological evaluations, the mother waived her right to do so on appeal.

## B

The mother next claims that ordering the evaluation constituted plain error. Practice Book § 4185.[15] It is rare that this exception to the requirement for seasonable objection in the trial court is invoked. *In re Mark C.,* 28 Conn. App. 247, 252, 610 A.2d 181, cert. denied, 223 Conn. 922, 614 A.2d 823 (1992). "Where a trial court's action does not result in any manifest injustice, a defendant's claim under the plain error doctrine does not warrant review. . . ." (Internal quotation marks omitted.) *State* v. *Morales,* 33 Conn. App. 184, 197, 634 A.2d 1193 (1993); *State* v. *Ulen,* 31 Conn. App. 20, 37–38, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). "Such review is reserved for truly extraordinary situations where the existence of error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Morales,* supra; *State* v. *Ulen,* supra, 38; *In re Mark C.,* supra. As we previously stated, the trial court may order a psychological evaluation without a hearing if all of the parties agree. In any event, the order did not result in manifest injustice. Further, the fact that the mother failed to object to the ordering of the evaluation and to the admission of the report frustrates any sense of injustice surrounding the admission of the report. The trial court did not commit plain error.

## III

Although the disposition of the issue in part I requires a new trial, we address the issue of the trial court's denial of the mother's request for blood testing since it is likely to recur on retrial.

---

[15] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court . . . ."

Certain additional facts are necessary for a proper resolution of this issue. On August 7, 1992, the mother requested, pursuant to General Statutes § 46b-168 (a),[16] that the trial court require the respondent father and the child to undergo blood grouping tests to determine whether the respondent father was, in fact, the father of the child. The court denied the motion on August 13, 1992, and found on the basis of past conduct of the mother that paternity was not an issue in the case. The trial court orally stated that the mother claimed that the respondent father was the father of the child in the divorce action and sought support from the respondent father, which required that the respondent father be the father of the child. See General Statutes § 46b-84 (a);[17] *Remkiewicz* v. *Remkiewicz*, 180 Conn. 114, 117, 429 A.2d 833 (1980). Further, the trial court found in the memorandum of decision that the mother's motion for blood grouping tests had "the purpose of attempting to undo the determination of [the father's] paternity of the child, who was both conceived and born during the parent's marriage and was previously judicially determined to be issue of their marriage and for whom [the] mother has received a substantial sum in child support both pendente lite and postjudgment [and viewed] this tactic as an ill conceived effort on the part of [the]

[16] General Statutes § 46b-168 (a) provides: "In any proceeding in which a question of paternity is an issue, the court or a family support magistrate, on motion of any party, may order the mother, her child and the putative father or the husband of the mother to submit to one or more blood grouping tests, to be made by a qualified physician or other qualified person, designated by the court, to determine whether or not the putative father or the husband of the mother can be excluded as being the father of the child. The results of such tests shall be admissible in evidence only in cases where such results establish definite exclusion of the putative father or such husband as such father."

[17] General Statutes § 46b-84 (a) provides: "Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance."

mother to delay and confuse [the] proceedings and to further obstruct and interfere with the father's relationship with the child; indeed to destroy that relationship with the man she has come to know and understand to be her father." The mother claims on appeal that the blood grouping tests were necessary to determine that all necessary parties are present in the neglect petition.

"General Statutes § 46b-168 provides that the court 'may' order blood tests upon a motion by any party. Thus, the order is discretionary." *Barlow* v. *Guerrera,* 9 Conn. App. 431, 432, 519 A.2d 623 (1987). We must, therefore, determine if the trial court abused its discretion. Id.

The trial court based the denial of the blood tests on estoppel. "There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist. . . ." (Citations omitted; internal quotation marks omitted.) *Remkiewicz* v. *Remkiewicz,* supra, 119. Both elements are met in this case. The mother claimed that the respondent father was the actual father during the divorce proceedings. This claim was calculated to have the respondent father believe that he was the actual father of the child. As a consequence, the father was required to pay support payments to the mother, which he would not have been required to do had the mother not claimed that he was the actual father. The mother was estopped from claiming that the respon-

dent father was not the actual father. The trial court did not abuse its discretion in denying her motion for blood testing.

The judgment is reversed in part and the case is remanded for a new trial as to the respondent mother only.

In this opinion the other judges concurred.