In the Interest of a **MALE CHILD**, Born on May 27, 1983

NO. 13663

(FC–TPR NO. 0435)

JUNE 8, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

The mother (Mother) and father (Father) (collectively Parents) of the male child born on May 27, 1983 (Child) appeal the family court's January 19, 1989 Judgment of Termination of Parental Rights (Judgment). We affirm.

## FACTS

Child was born in Honolulu. On November 9, 1984 the State of Hawaii Department of Human Services (DHS) initiated proceedings in the family court, FC–J No. 84–42730, to protect the Child under the Child Protective Act, HRS chapter 587. On December 12, 1984 the family court approved and ordered a "Stipulation Establishing Jurisdiction and Awarding Family Supervision [to DHS]."

On January 4, 1986 DHS removed Child from Parents' home and placed him in an agency foster home. On January 16, 1987 DHS placed Child in the custody of foster parents (Foster/Adoptive Parents). DHS's "Petition for Forfeiture and Termination of Parental Rights," filed on March 16, 1987 (March 16, 1987 Petition), was orally granted on December 12, 1988. On December 30, 1988 the family court summarily denied Parents' December 23, 1988 motion for reconsideration. Following the January 19, 1989 Judgment, Foster/Adoptive Parents adopted Child on April 25, 1989.

Father and Mother filed separate notices of appeal and opening briefs. Both raise numerous points on appeal, all but three of which we summarily reject.

## DISCUSSION

### I.

Parents contend that HRS § 571–54 (1985) entitled them to a hearing before the family court denied their motions for reconsideration of the Judgment. We disagree.

HRS § 571–54 mandates hearings on motions for reconsideration of orders or decrees "entered in a proceeding based upon [HRS] section 571–11(1), (2), (6) or (9)[.]" The instant case, however, was based on HRS § 571–11(5) (1985) which provides: "Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings . . . [f]or the termination of parental rights under sections 571–61 to 571–63."

### II.

Although they did not raise this issue in the family court, Parents contend on appeal that under both the state and federal constitutions HRS § 571–61(b)(1)(E) (1985) is unconstitutionally vague on its face. We disagree.

According to *Woodruff v. Keale*, 64 Haw. 85, 95, 637 P.2d 760, 767 (1981):

> The void for vagueness doctrine, as traditionally applied to criminal statutes, requires inquiry into the following: (a) Whether the statute provides fair warning of proscribed conduct; (b) whether it provides clear guidelines so as to prevent arbitrary application and enforcement; and (c) whether the statute "overreaches" by lack of clarity so as to prohibit lawful or constitutionally protected, as well as unlawful, activities.

(Citations and footnote omitted.)

Assuming the *Woodruff* requirements apply to Hawaii's termination of parental right statute, HRS §§ 571–61, –62, –63, we conclude that it satisfies the *Woodruff* requirements.

HRS § 571–61(b)(1)(E) provides: "The family courts may terminate the parental rights in respect to any child as to any legal parent . . . [w]hose child has been removed from the parent's physical custody pursuant to legally authorized judicial action under section 571–11(9), and who is found to be unable to provide now and in the foreseeable future the care necessary for the well–being of the child[.]"

HRS § 571–11(9) (1985) provides: "Except as otherwise provided in this chapter, the court shall have exclusive original jurisdiction in proceedings . . . [f]or the protection of any child under chapter 587."

HRS § 587–11 (Supp. 1989) provides as follows:

> **Jurisdiction.** The court shall have exclusive original jurisdiction in a child protective proceeding concerning any child who was or is found within the State at the time such facts and circumstances occurred, are discovered, or are reported to the department, which facts and circumstances constitute the basis for the finding that the child is a child whose physical or psychological health or welfare is subject to imminent harm, has been harmed, or is subject to threatened harm by the acts or omissions of the child's family.

HRS § 587–73 (Supp. 1989) provides in relevant part as follows:

> **Permanent plan hearing.** (a) At the permanent plan hearing, the court shall consider fully all relevant prior and current information pertaining to the guidelines for determining whether the child's family is willing and able to provide the child with a safe family home, as set forth in section 587–25, including, but not limited to, the

report or reports submitted pursuant to section 587–40, and determine whether there exists clear and convincing evidence that:

   (1)   The child's family is not presently willing and able to provide the child with a safe family home, even with the assistance of a service plan;

   (2)   It is not reasonably foreseeable that the child's family will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed three years from the date upon which the child was first placed under foster custody by the court;

   (3)   The proposed permanent plan is in the best interests of the child; provided that the court shall presume that:

      (A)  It is in the best interests of a child to be promptly and permanently placed with responsible and competent substitute parents and families in safe and secure homes; and

      (B)  Such presumption increases in importance proportionate to the youth of the child upon the date that the child was first placed under foster custody by the court; and

   (4)   If the child has reached the age of fourteen, the child is supportive of the permanent plan.

   (b) If the court determines that the criteria set forth in subsection (a) are established by clear and convincing evidence, the court shall order:

(1) That the existing service plan be terminated and that the prior award of foster custody be revoked.

(2) That permanent custody be awarded to an appropriate authorized agency;

(3) That an appropriate permanent plan be implemented concerning the child whereby the child will:

    (A) Be adopted pursuant to section 587-74; provided that the court shall presume that it is in the best interests of the child to be adopted, unless the child is in the permanent custody of family or persons who have become as family and who for good cause are unwilling or unable to adopt the child but are committed to and are capable of being the child's permanent custodians; or

    (B) Remain in permanent custody until the child is subsequently adopted or reaches the age of majority, and that such status shall not be subject to modification or revocation except upon a showing of extraordinary circumstances to the court;

\* \* \*

(e) The court shall order a permanent plan for the child within three years of the date upon which the child was first placed under foster custody by the court, if the child's family is not willing and able to provide the child with a safe family home, even with the assistance of a service plan.

### A.

Parents contend that "foreseeable future" has not been defined. We disagree.

From the parents' point of view, HRS §§ 587–73, –74, dealing with the protection of children, and HRS §§ 571–61, –62, –63, dealing with the termination of parental rights, address the same problem and accomplish the same result. A comparison reveals that an award of permanent custody under HRS chapter 587 (Supp. 1989) involves essentially the same criteria and material elements as a termination of parental rights under HRS § 571–61(b)(1)(E). That is why HRS § 571–61(b)(1)(E) authorizes the termination of parental rights in most cases where the HRS § 587–73 criteria for the award of permanent custody has been satisfied. The only difference is that HRS § 587–73(a) authorizes the award of permanent custody when the child's family is either unwilling or unable to provide the child with a safe family home, whereas HRS § 571–61(b)(1)(E) authorizes the termination of parental rights when the parent is unable to provide the care necessary for the well–being of the child.

Therefore, we conclude, as a matter of statutory interpretation, that the phrase "foreseeable future" in HRS § 571–61(b)(1)(E) has a meaning consistent with HRS § 587–73(a)(2) and (e). "Foreseeable future" in HRS § 571–61(b)(1)(E) means three years from the filing date of the petition for termination of parental rights.

### B.

Parents also contend that what is "the care necessary for the well–being of the child" has not been defined. Again we disagree. The basic definition is contained in HRS § 587–25 (Supp. 1989). That section, which contains 27 guidelines for determining

whether the child's family is willing and able to provide the child with a safe family home, provides in relevant part as follows:

**Guidelines for determining whether the child's family is willing and able to provide the child with a safe family home.** (a) The following guidelines shall be fully considered when determining whether the child's family is willing and able to provide the child with a safe family home:

\* \* \*

(5) Whether the child has been the victim of repeated harm after an initial report and intervention by a social agency;

\* \* \*

(7) The results of psychiatric/psychological/developmental evaluations of the child, the alleged perpetrator and other appropriate family members who are parties;

\* \* \*

(17) The willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(18) Whether the child's family demonstrates adequate parenting skills, such as providing the child and other children under their care with:

(A) Minimally adequate health and nutritional care;

(B) Stimulation, care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) Guidance and supervision consistent with the child's safety;

(D) A safe physical home environment; and

(E) Protection from repeated exposure to vio-
lence even though not directed at the child;
(19) Whether the child's family has an understand-
ing of the child's needs and capabilities[.]

\* \* \*

## III.

Although they did not raise this issue in the family court, Parents contend on appeal that DHS violated their federal and state constitutional due process right to be timely notified of the factual basis of the March 16, 1987 Petition for termination of their parental rights. We disagree.

The essential elements alleged in the March 16, 1987 Petition are as follows:

1. In FC–J 84–42730, pursuant to HRS § 587–11, the family court determined that Child's "physical or psychological health or welfare is harmed, or is subject to imminent harm or threatened harm by the acts of omissions of [Child's] family."

2. In FC–J 84–42730, Child was removed from Parents' physical custody by judicial action authorized by HRS § 571–11(9) and HRS chapter 587.

3. Mother and Father are unable to provide now and in the foreseeable future the care necessary for the well–being of Child.

HRS § 571–62 (Supp. 1989) provides in relevant part as follows:

If the petition has been filed by or at the request of the department of human services . . . the department of human services shall prepare or procure and file in the termination proceeding a report of the facts disclosed as a result of investigation of the circumstances of the minor and the parent or parents whose rights are sought to be terminated. \* \* \* Any such report shall be incorporated

in the record of the proceeding and shall be considered by the court in determining the issues presented by the petition.

The report required by HRS § 571–62 is an outline of the factual basis of the case for termination of the parental rights of Parents. In the instant case, the March 16, 1987 Petition was filed at 12:52 p.m. The report required by HRS § 571–62 was filed on March 16, 1987, at 12:52 p.m. (March 16, 1987 Report), immediately after the filing of the March 16, 1987 Petition. The proof of service filed on April 28, 1987 proves that the March 16, 1987 Petition and a notice of hearing were served on Parents on April 28, 1987. Hawaii Family Court Rules (HFCR) Rule 5(a) required DHS to serve a copy of the March 16, 1987 Report upon Parents. HFCR Rule 5(b) required DHS to file a proof of service. The DHS's failure to comply with Rule 5(b) suggests that it also failed to comply with Rule 5(a). However, Parents were not prejudiced by and do not appeal the violation of their notification rights under applicable statutes and rules.

The issue on appeal is whether the family court violated Parents' state and federal constitutional due process rights to be timely notified of the factual basis of the March 16, 1987 Petition. Despite the probability that a copy of the March 16, 1987 Report was not served on Parents at the inception of this proceeding, the record disproves a violation of their constitutional due process right.

First, the fact that FC–J 84–42730 was a statutorily required preliminary to this case casts serious doubt on the credibility of Parents' allegation that they were not timely notified of the factual basis in question. Second, when the trial of this case commenced on November 30, 1987, DHS introduced the March 16, 1987 Report and other evidence that clearly detailed the factual basis of the case for the judicial termination of the Parents' parental rights. Third, the length of the trial after its commencement on November

30, 1987 cured the harm, if any, caused by DHS' failure to provide the required notification prior to November 30, 1987. The following occurred during the subsequent days of trial:

| | |
|---|---|
| December 14, 1987 | Trial. |
| December 23, 1987 | Trial. |
| December 24, 1987 | Trial. |
| January 4, 1988 | Trial. At the end of this day the family court continued the trial and ordered Mother's counsel to prepare a service plan.[1] |
| November 22, 1988 | Trial. |
| December 5, 1988 | Trial. |
| December 6, 1988 | Trial. |
| December 12, 1988 | Oral decision. |

[1] HRS §§ 587–26(a), (b), and (c) (Supp. 1989) provides:

**Service Plan.** (a) A service plan is a specific written plan prepared by an authorized agency and presented to such members of the child's family as the appropriate authorized agency deems to be necessary to the success of the plan, including, but not limited to, the member or members of the child's family who have legal custody of the child at the time that the service plan is being formulated or revised under this chapter.

(b) The service plan should set forth:

(1) The steps that will be necessary to facilitate the return of the child to a safe family home, if the proposed placement of the child is in foster care under foster custody;

(2) The steps that will be necessary for the child to remain in a safe family home with the assistance of a service plan, if the proposed placement of the child is in a family home under family supervision; and

(3) The steps that will be necessary to make the family home a safe family home and to terminate the appropriate authorized agency's intervention into the family and eliminate, if possible, the necessity for the filing of a petition with the court under this chapter.

(c) The service plan should also include, but not necessarily be limited to:

In our view, the above facts, plus the fact that prior to this appeal Parents did not object to not being notified prior to November 30, 1987 of the factual basis in support of the March 16, 1987 Petition, disprove Parents' contention that the January 19, 1989 Judgment denied them their constitutional due process rights to be timely notified, prior to November 30, 1987, of the factual basis of the March 16, 1987 Petition for termination of their parental rights.

## CONCLUSION

Accordingly, we affirm the family court's January 19, 1989 Judgment of Termination of Parental Rights.

*Gary Paul Levinson* on the briefs for appellant mother of minor.

---

(1) The specific services or treatment that the parties will be provided and the specific actions the parties must take or specific responsibilities that the parties must assume; the time frames during which such services will be provided and such actions must be completed and such responsibilities must be assumed;

(2) The specific consequences that may be reasonably anticipated to result from the parties' success or failure in complying with, performing, and completing, if possible, each and every term and condition of the service plan, including, but not limited to, the consequence that, unless the family is willing and able to provide the child with a safe family home within the reasonable period of time specified in the service plan, their respective parental and custodial duties and rights shall be subject to termination by award of permanent custody; and

(3) Such other terms and conditions as the appropriate authorized agency deems to be necessary to the success of the service plan.

*Leland B. T. Look* on the briefs for appellant father of minor.

*Kenneth Enright* and *Jay K. Goss*, Deputy Attorneys General, on the briefs for appellee Department of Human Services.