J-S13005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: P.T.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: M.G., MOTHER | |
| | No. 1636 MDA 2021 |

Appeal from the Dispositional Order Entered November 18, 2021
In the Court of Common Pleas of Northumberland County
Juvenile Division at No.: CP-49-DP-0000083-2011

BEFORE:  STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 09, 2022**

Appellant, M.G. ("Mother") appeals from the November 18, 2021 dispositional order adjudicating P.T.G. ("Child"), her minor child, dependent, removing him from the home of Mother and C.S., his Maternal Grandmother ("Maternal Grandmother"), placing Child in foster care, and ordering supervised visitation with a goal of reunification.  We affirm in part and vacate in part.

Northumberland County Children and Youth Services ("CYS" or the "Agency") has been involved with Child's family since 2011, when he was four years old.  Child was first adjudicated dependent on November 30, 2011 and placed in legal custody of CYS.  He remained in placement until February of

_____

[*] Former Justice specially assigned to the Superior Court.

2013, after which Child and Mother lived with Maternal Grandmother and Child's maternal grandfather, who has since passed away. On December 27, 2016, CYS received another referral when Mother overdosed on heroin in the family home. CYS first received concerns about truancy from Child's school in November of 2019, and again on March 5, 2020. On February 18, 2021, CYS met with Maternal Grandmother regarding Child's failure to complete schoolwork and his failure to login to remote learning sessions. Another meeting occurred on February 23, 2021 regarding, among other things, Child's pending failure of several of his seventh-grade courses. CYS filed a dependency petition on March 18, 2021 alleging that Child was without proper parental care or control, and that he was habitually truant from school. The trial court conducted a hearing on May 6, 2021 and declined to adjudicate him dependent or remove him from the home.

The instant matter arose from an October 13, 2021 referral informing CYS that Child had completely failed to attend school during the 2021-2022 school year. N.T., 11/10/21, at 16. Several subsequent attempts to contact the family were unsuccessful. *Id.* at 16-18. On November 9, 2021, CYS personnel and a local police officer traveled to Maternal Grandmother's home, where Mother and Child both lived. Initially no one answered the door, but Mother eventually arrived as a passenger in a car. *Id.* at 18. She was slumped over in the back of the car, and after exiting the vehicle she exhibited slurred speech and difficulty in standing. *Id.* at 18; N.T. 11/18/21, at 13.

Mother claimed she had just come from a methadone clinic. N.T 11/18/21, at 23. While Mother was present, the CYS caseworker was able to contact Maternal Grandmother—Child's legal guardian—by phone. N.T. 11/10/21, at 18. Maternal Grandmother claimed to be shopping in Selinsgrove, but the police officer heard voices from inside the home. *Id.* at 18-19; N.T. 11/18/21, at 16-18. Eventually, Maternal Grandmother came to the door with Child. *Id.* She was unable to provide any verification that Child was enrolled in any cyber school or private school. N.T. 11/10/21, at 18-19; N.T. 11/18/21, at 19-20. Also, Grandmother spoke of difficulties in her life stemming from her deteriorating mental and physical health and the recent death of her husband, Child's grandfather. N.T. 11/10/21, at 19; N.T. 11/18/21, at 16.

On November 9, 2021, CYS received a verbal order granting them physical custody of Child. N.T. 11/10/21, at 19-20. A shelter care hearing took place on November 10, 2021, and the trial court granted CYS's petition for protective custody. *Id.* at 30-31. CYS filed a dependency petition on November 12, 2021, alleging that Child was without proper parental care or control.

At the November 18, 2021 hearing on the petition, school officials confirmed Child's total absence from school during the Fall of 2021. N.T., 11/18/21, at 28. Child's school received nothing regarding Child's enrollment in any other school until a November 12, 2021 request from Milton Area School District. *Id.* at 46. Child failed two subjects as a seventh grader the previous

year and never completed a required summer remedial program. *Id.* at 29-32, 44-45. Thus, he would have had to repeat seventh grade when he returned. *Id.* at 50. The principal confirmed that truancy letters had been sent on October 26, 2021 and November 9, 2021. *Id.* at 48. A school attendance improvement meeting between Mother, Maternal Grandmother, and school officials occurred on November 15, 2021, just before the hearing. *Id.* at 43, 50. Otherwise, the truancy proceeding had gone no further. Rather, the school referred the matter to CYS and the local police, resulting in the welfare check on November 9, 2021.

At the conclusion of the hearing, the trial court entered the order on appeal. Mother filed this timely appeal in which she presents four questions for our review:

1. Whether the trial court erred or abused its discretion by adjudicating [Child] dependent?

2. Whether the trial court erred or abused its discretion by allowing the dependency petition to be amended?

3. Whether the trial court erred or abused its discretion by removing [Child] from the physical custody of [Mother]?

4. Whether the trial court erred or abused its discretion by ordering supervised visitation[.]?

Mother's Brief at 2.

We conduct our review as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the

lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re E.B.*, 83 A.3d 426, 430 (Pa. Super. 2013).

The Juvenile Act defines dependent child, in relevant part, as follows:

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;

[…]

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

42 Pa.C.S.A. § 6302, Dependent child. "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *E.B.*, 83 A.3d at 431. "A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian, or other custodian that places the health, safety or welfare of the child at risk[.]" *Id.* "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *Id.*

- 5 -

For analytical clarity we begin with Mother's second argument, which challenges the trial court's decision, during the November 18, 2021 hearing, to grant the Guardian *Ad Litem*'s ("GAL") oral motion to amend the dependency petition. The Agency's dependency petition was a partially preprinted form with a checklist quoting verbatim the statutory bases for dependency under § 6302. CYS checked the box next to lack of parental control (subsection one of the statutory definition) but **did not** check the box next to habitual truancy (subsection five of the statutory definition). Because of this, Mother's counsel lodged an objection and asked the trial court to exclude all of the truancy evidence as irrelevant. N.T. 11/18/21, at 55. Initially, the trial court agreed and sustained the objection. *Id.* In response, the GAL moved to amend the petition, arguing that all parties were on notice that Child's absence from school was at issue—indeed that was the reason for the October 13, 2021 referral that culminated in the dependency hearing. *Id.* at 57. The Agency did not join in the GAL's motion and argued the GAL had no authority to amend the Agency's petition:

For full context, we quote the exchange among counsel:

[GAL]: Your Honor, I would, as the Guardian Ad Litem, based upon the hour's worth of testimony that we've heard, I would ask that the dependency petition be modified to include an allegation under Paragraph 5 which the parties were on notice of. Everybody thought that box five was checked about compulsory school attendance.

[CYS Counsel]: I don't –

[GAL]: This testimony was gone over in depth at the shelter care. So I think – I think everybody was on – everyone thought it was part of the petition. So I'd ask that it be modified to include that.

[CYS Counsel]: And I'm not going to allow for my petition to be modified. I mean I don't think you can modify what I filed. We are here because this child lacks proper parental care and control. It's not – yes, the child was not attending school. If everybody wants to stipulate to that, that's fine. I'm not the one that's – was asking about about [sic] – pardon me?

[Child's Counsel]: The school just filed the – for the safe program – for the safe meeting. They just did that.

[CYS Counsel]: But he still wasn't attending. Whether or not the school did its job or not is not […] the issue here.

[…]

[Maternal Grandmother's Counsel]: The reason that the initial referral came was for truancy. That has been testified in this hearing. If the agency is not going forward on that ground, then why are they reviewing cases removing kids because of truancy?

Southern Columbia – I mean regardless of what is true Southern Columbia did not follow the correct truancy procedure by statute. […]

Again they have to start with this compulsory school attendance improvement plan meeting. They did not do that. So the whole case essentially has begun over a truancy and the child not going to school; and even if we don't even dispute that he has not been going to school, the

procedure that needs to be followed by statute[1] was not followed –

[CYS Counsel]: By the school.

[Maternal Grandmother's Counsel]: Yes.

[CYS Counsel]: That has nothing to do with the agency. The agency – failing to get an adequate education for a child is a child welfare category, and it doesn't necessarily mean that it goes to – that it falls under your definition of what the school must do for truancy.

---

[1] Maternal Grandmother's counsel refers to 24 P.S. § 13-1333.1 of the Public School Code. § 13-1333.1, titled "Procedure by school when child habitually truant," which provides in relevant part as follows:

(a) When a child is habitually truant and under fifteen (15) years of age at the time of referral, the school:

(1) Shall refer the child to either of the following:

(i) A school-based or community-based attendance improvement program.

(ii) The county children and youth agency for services or for possible disposition as a dependent child under the provisions of 42 Pa.C.S. Ch. 63 (relating to juvenile matters).

(2) May file a citation in the office of the appropriate judge against the person in parental relation who resides in the same household as the child.

[…]

(d) **When referring a habitually truant child to the county children and youth agency or filing a citation with the court because a child has been habitually truant, the school shall provide verification that a school attendance improvement conference was held.**

24 P.S. § 13-1333.1(a), (d) (emphasis added). Given our disposition in the main text, we need not consider the effect of the school district's compliance, or lack thereof, with these dictates.

[…]

[CYS Counsel]: Failure to get the child an education is neglect. That's the parental responsibility whether or not the school did what they were supposed to do or not. The fact of the matter is that this child has not gone to school for it's going on two years, but has not been at all, and has not registered until when the agency received custody, and they went up and registered him in Milton because that's where he's staying right now.

So [Mother] and [Maternal Grandmother] did nothing. And that is a component of our case regarding not having proper parental care or control.

*Id.* at 56-59.

Despite CYS counsel's statement that it did not wish to amend its own petition, the trial court granted the GAL's motion to amend. *Id.* at 60. Mother argues that the trial court erred because the GAL was not the proper party to move for amendment. The GAL argues that the amendment was proper, noting that the applicable procedural rule is not specific as to who may amend a petition:

A. Amendment**.**

(1) Mandatory. The court shall allow a petition to be amended when there is a defect in:

(a) form;

(b) the description of the allegations;

(c) the description of any person or property; or

(d) the date alleged.

(2) *Discretionary*. Absent prejudice to any party, the court may allow a petition to be amended if the petition alleges a different set of events or allegations, where the elements or matters of

> proof by any party are materially different from the elements or matters of proof to the allegation originally petitioned.

Pa.R.J.C.P. 1334(A).

Rule 1334(A)(2), the GAL notes, is not specific as to the proper movant for an amendment. Thus, she believes her motion was proper because Rule 1334(A)(2) does not exclude amendment of a dependency petition by a non-filing party. We find this argument unavailing, however, because the Rules of Juvenile Procedure are very specific as to who may file a dependency petition. Rule 1330, which governs the filing of dependency petitions, permits the county agency to file a dependency petition within 24 hours of a shelter care hearing. Pa.R.J.C.P. 1330(A)(2). The official comment to Rule 1330 explains, "paragraph (A)(2) requires that the county agency file a petition. Any other person, other than the county agency, is to file an application to file a petition under Rule 1320." Pa.R.J.C.P. 1330, *cmt*. Because the instant petition was filed by the Agency in accord with Rule 1330, we discern no valid basis for permitting the GAL to amend it. Any party wishing to file a dependency petition on grounds other than those specified in the Agency's petition would have had to proceed under Rule 1320.

Based on the foregoing, the trial court erred in granting the GAL's motion to amend the Agency's petition over the Agency's objection. We

therefore analyze the trial court's adjudication of dependency[2] based on the grounds specified in the Agency's petition—lack of parental care or control.[3]

Thus, we turn to Mother's first assertion of error.  Mother's argument that the trial court erred in adjudicating Child dependent builds on her argument that the trial court erred in granting the GAL's motion to amend. She claims a procedural due process violation because Child was adjudicated dependent based on allegations not contained in the petition.  Mother cites *In re R.M.*, 790 A.2d 300, 306 (Pa. 2002), wherein our Supreme Court held that the variance between the allegations in the petition and the proofs offered at the hearing violated due process.  The *R.M.* Court wrote as follows:

> Although by design juvenile proceedings are characterized by a degree of informality and flexibility, where constitutionally protected interests are at stake, the Due Process Clauses of the United States Constitution impose a requirement of fundamental fairness.  *See* U.S. CONST. amends. V, XIV § 1[.]  While due process requirements are themselves flexible and non-technical, they subsume a core demand for adequate notice provided sufficiently in advance of a deprivation proceeding so as to afford a reasonable opportunity to prepare a defense.

*Id.* at 304-05 (some citation omitted).  Parents have a due process interest in the care and custody of their children.  *Id.* at 304 n.8.  Our Supreme Court concluded,

> [i]n light of the gravity of the parental interests involved and the limited imposition upon the government in terms of identifying

---

[2]  The trial court adjudicated Child dependent for both lack of parental care or control and habitual truancy.

[3]  We note with disapproval that the Agency has not filed an appellate brief.

- 11 -

> factual circumstances of which it must have some awareness and since the primary objective of notice is to ensure the opportunity of a meaningful hearing [...] we believe that reasonable factual specificity is required in the dependency setting.

*Id.* at 305.

Mother argues an improper variance between the petition and the proofs in this case, because the petition alleged lack of parental care or control and the proofs centered on Child's truancy. We disagree, and discern no improper variance here. Mother seemingly assumes that her success on her argument against the amended petition will lead to her success on her procedural due process argument, but this is not so. Subsection (1) of the statutory definition of dependent child provides that dependency exists where the child "is without proper parental care or control, subsistence, [or] **education as required by law**[.]" 42 Pa.C.S.A. § 6302, Dependent child (1) (emphasis added). Thus, the statutory definition of dependency, insofar as it addresses a child's educational needs, is not limited in scope to truancy issues under subsection five. The Agency's November 12, 2021 dependency petition quotes subsection one verbatim, and the Agency checked the box indicating it was proceeding under that subsection. Mother was therefore on notice that Child's educational needs were at issue, both from the express allegations in the petition itself and from the events that preceded it. We discern no procedural due process violation.

Turning to the merits, the record demonstrates that Child's total failure to attend school during what would have been his eighth-grade year was an

issue, and all parties were well aware of it.  The record also demonstrates that Child's attendance issues went at least as far back as February of 2020.  But Child's educational issues were broader than that.  During Child's 2020-2021 seventh-grade year, he failed two courses.  Child then failed to complete summer remedial work that could have allowed him to move forward to eighth grade for the 2021-2022 school year.  The Agency's repeated attempts to help the family address these issues were futile.  Mother's argument is dependent on the alleged lack of due process.  She does not, and seemingly cannot, argue that she properly attended to Child's educational welfare.  We discern no abuse of discretion in the trial court's finding, by clear and convincing evidence, that Child's educational needs were going unmet.  In summary, all parties were on notice that the Agency was proceeding under subsection one of the statutory definition of dependent child, and the adjudication of dependency was proper thereunder.

In her next question presented, Mother argues that the trial court erred in ordering Child removed from her physical custody.  This argument builds on Mother's contention that her due process rights were violated.  We reject this argument based on our analysis above.

Finally, Mother argues that the trial court erred in limiting her visitation with Child.  Mother cites to cases holding that reduction or cessation of visitation rights is appropriate only where such visits pose a "grave threat" to the child.  She cites **In re C.J.**, 729 A.2d 89 (Pa. Super. 1999), for the

proposition that "parental visitation is usually not denied or limited [where the goal is reunification] unless visitation with the parent poses a grave threat to the child." *Id.* at 95. In *C.J.*, the parents were incarcerated in state correctional institutions far distant from their children's foster homes. The trial court restricted visitation to once every six months, to coincide with parents' appearances for dependency review hearings. *Id.* at 92. This Court, reasoning that the parents were to blame for their criminal convictions and that the state was under no obligation to transport them long distances for child visits, affirmed. *Id.* at 96-97.

*C.J.*, as is obvious, involved circumstances distinct from the instant case, and it does not advance Mother's argument. Here, the trial court ordered no less than one hour per week of supervised visitation between Mother, Maternal Grandmother, and Child. Order, 11/22/21, at 2. Mother does not acknowledge the general rule, described in *C.J.*, that "[t]he polestar and paramount concern in evaluating parental visitation, in dependency as well as non-dependency situations, is the best interests and welfare of the children." *Id.* at 94. Mother does not explain how the trial visitation schedule was not in Child's best interest, nor does she explain why the visitation schedule constitutes so severe a restriction as to require application of the "grave threat" standard. We observe, for example, that the Pennsylvania Code provides that county agencies "shall provide opportunity for visits between the child and parents as frequently as possible but **no less**

**frequently than once every 2 weeks** at a time and place convenient to the parties and in a location that will permit interaction[....]" 55 Pa. Code. 3130.68 (emphasis added). We are cognizant that this provision governs county agencies but is not binding on reviewing courts. *C.J.*, 729 A.2d at 94. Regardless, § 3130.68, in condoning bi-weekly rather than weekly visitation, undermines Mother's argument that the visitation schedule was unlawfully restrictive. Because Mother's final argument finds no support in the law she cites, it fails.

In summary, we have concluded that the trial court erred in permitting the GAL to amend the Agency's dependency petition to include an allegation of habitual truancy. We therefore vacate the order of disposition insofar as it is based on child's habitual truancy under subsection five of the statutory definition. 42 Pa.C.S.A. § 6302, Dependent child, (5). Because Mother's other arguments lack merit, we affirm the order of disposition insofar as it was based upon an adjudication of dependency under subsection one of the statutory definition. 42 Pa.C.S.A. § 6302, Dependent child (1).

Order of disposition affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/09/2022

- 15 -