J-A10015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: B.G. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ALLEGHENY COUNTY CHILDREN YOUTH AND FAMILIES | No. 1596 WDA 2015 |

Appeal from the Order Entered May 30, 2015
In the Court of Common Pleas of Allegheny County
Family Court, at No(s): CP-02-DP-0000797-2015

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY PANELLA, J.                **FILED FEBRUARY 07, 2017**

Allegheny County Office of Children, Youth and Families ("CYF") appeals from the order entered on May 30, 2015, adjudicating as dependent B.G. ("Child"), a minor male from Guatemala, who was living with his adult cousin, B.G. ("Adult Cousin"), pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302(1) and (4). We affirm.[1]

---

[1] This Court previously quashed CYF's appeal from the May 30, 2015 order as inoperative, in light of the trial court's order entered on June 29, 2015, granting reconsideration of the May 30 dispositional order. In the order entered on September 14, 2015, the trial court denied reconsideration, thus necessitating that CYF file a notice of appeal anew. *See* Pa.R.A.P. 1701(b)(3) ("[T]he time for filing a notice of appeal. . . begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court….") CYF timely filed the present appeal on October 14, 2015, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In its notice of appeal, however, CYF purports to appeal from the denial of the motion for reconsideration. That is incorrect. The appeal lies from the May 30 dispositional order. The grant of reconsideration simply acted to toll the period for filing an appeal until a decision on the reconsideration was

The trial court summarized the background of the appeal as follows.

> B.G. ("Child") came to the attention of the [c]ourt when Petitioner Casa San Jose filed an application to file a private dependency petition, alleging the following:
>
> [Child] was hospitalized with a form of tuberculosis in December. Because he is an unaccompanied minor, [B.G. ("Adult Cousin")] is not his guardian. [Adult Cousin] wasn't able to make medical decisions for him. He had a temporary legal guardian, which expired shortly afterwards. [Adult Cousin] has brought him to his monthly appointments at the Allegheny County Health Department TB Clinic but hasn't followed up on any of the other needed care. He should be receiving care to check the stability of his spine as well as appointments to check that the medication isn't damaging his vision. [Adult Cousin] is his caregiver but he is planning to go back to Guatemala in the next few months, leaving [Child] alone in the U.S. without a caretaker, income or documents to work, [Child]'s health will be in danger.[1]
>
> The Court adjudicated Child dependent on May 22, 2015.[2] On appeal, the Allegheny County Office of Children, Youth and Families ("CYF") takes issue with the [trial court's] decision to adjudicate Child dependent and other matters related to that adjudication.
>
> _____
>
> [1] Application to File Private Dependency Petition, Petition for Dependency, and Request for Special Immigrant Juvenile Status, 3 (April 22, 2015) (hereinafter referred to as the "Private Dependency Petition").
>
> [2] Order of Adjudication [dated] (May 22, 2015). [The order was filed on May 30, 2015.]

Trial Court Opinion, 11/20/15, at 1.

_____

granted. **See** Pa.R.A.P. 1701(3); Pa.R.C.P. 1930.2. We have corrected the caption accordingly.

- 2 -

Further, in its opinion dated November 20, 2015, the trial court set forth the following factual background and procedural history regarding this appeal, which we incorporate herein, as follows.

## I. Factual Background.

The [c]ourt incorporates the following findings from its May 22, 2015 order adjudicating Child dependent:[3]

### Participants

12. Child was born [in] June 1997. He currently resides in Allegheny County in the home of his adult cousin, [Adult Cousin].

13. Child is unmarried.

14. From birth to approximately age 15, Child resided in a town of approximately 5000 residents in Guatemala.

15. Child entered the Unite[d] States as an undocumented immigrant. He was picked up at the border by immigration authorities and was initially held in a juvenile shelter. The immigration authorities designated [Adult Cousin] as Child's sponsor and sent Child to Allegheny County to live in [Adult Cousin's] care, pending further immigration proceedings.

16. Child began residing with [Adult Cousin] in December 2013.

17. [Adult Cousin] resides in Allegheny County, and has resided in the United States for approximately six years. Previously, he resided in the same town in Guatemala where Child resided.

18. [Adult Cousin] is employed. He works six days per week for ten hours per day.

19. [Adult Cousin] does not have any form of court-issued authorization to obtain health care or consent to medical treatment for Child.

20. Child's Mother is [C.P.G. ("Mother")]. [Mother] resides in Guatemala in the town where Child resided previously. Mother speaks a Mayan dialect. She does not speak Spanish or English. Mother does not know how to read or write.

21. Mother was not able to provide the Court with a mailing address. There is no post office in her town. The nearest post office is approximately five hours away. Mother did not know how mail could be addressed to her to receive it there.

22. Mother does not have access to email and is not familiar with the internet. Mother believed that internet access might be available in another town, but not in the town where she lives.

23. Mother did not receive a copy of the Application and Petition filed in this matter. Although [Adult Cousin] speaks with her on the phone regularly and has told her about court proceedings involving Child, it appears likely that the proceedings discussed were federal immigration proceedings, not this dependency matter.

24. Through counsel, Mother waived notice of this proceeding.

25. Child's Father is [A.G.G. ("Father")]. Father lives in the same household with Mother.

26. Although Father resides with Mother, he is frequently away from the household either working or looking for work. He returns to the household about once per month.

27. At the time of this hearing, Father was away looking for work. Mother did not know his specific whereabouts.

28. Casa San Jose is a social service agency that is operated by the Sisters of St. Joseph. The agency assists Latino immigrants who reside in Allegheny County. Among other things, the agency provides service coordination and advocacy, tutoring, mentoring, assistance with translation, occasional assistance with transportation.

29. Casa San Jose has provided services to Child and [Adult Cousin] since the summer of 2014. Services provided have included assistance getting Child enrolled in school, assistance in

obtaining well-child health care at a free clinic, transportation to some medical appointments, and attendance with Child and [Adult Cousin] at some medical appointments to assist with English/Spanish translation.

30. Casa San Jose does not have legal custody of Child and does not have any form of authority to obtain health care or consent to medical treatment for Child.

**Child's Care and Treatment in Allegheny County:**

31. Child is enrolled in Gateway School District. He attends ninth grade and is assigned to an English as a Second Language program.

32. Child has a heart murmur that requires monitoring.

33. In approximately November 2014 [Adult Cousin] became aware of an abscess on Child's back and sought medical treatment for him.

34. Child was hospitalized at Forbes Regional Hospital for approximately two weeks and was discharged in December 2014.

35. Child was diagnosed with tuberculosis of the spine ("TB"), also known as Pott's Disease. Child's condition is not contagious.

36. Child's condition does require a medication treatment regimen that lasts six to nine months.

37. Child receives treatment for his TB through the Allegheny County Health Department. The Health Department delivers medications to Child's home daily and provides "Direct Observed Therapy." The Health Department also provides dosages of the necessary medications for the weekends.

38. Child also attends appointments for monitoring at the Health Department's TB clinic.

39. Child is currently in the sixth month of his treatment regimen. His treatment for the TB is not yet completed.

40. One of the medications initially prescribed to Child for the TB can affect vision. That medication has been changed.

41. When Child was hospitalized, hospital staff recognized that no one involved in Child's care had legal authority to obtain and consent to treatment for Child. The hospital arranged for an agency that typically provides guardianship services for elderly clients to be appointed as Child's temporary legal guardian.

42. Child's discharge plan from Forbes Regional Hospital included recommendations for cardiology, neurology and orthopedic follow-up appointments. None of this recommended follow-up has occurred.

43. The appointed temporary legal guardian did not take responsibility for ensuring that follow-up treatment occurred. The temporary guardianship has now expired.

44. The Allegheny County Health Department apparently has been willing to provide TB treatment to Child despite the absence of an adult with legal authority to consent to treatment. However, the lack of an adult with legal authority to consent to treatment has posed difficulties for Child.

45. For example, at one appointment at the TB clinic, a blood draw was needed. The TB clinic director was initially unwilling to permit it because no adult with legal authority to consent was present. A Casa San Jose staff member who was present at the appointment successfully advocated with the clinic and persuaded the clinic to perform the blood draw.

46. Although [Adult Cousin] believes he has taken Child to all necessary medical appointments, Casa San Jose staff testified credibly that [Adult Cousin] has missed appointments because of his work schedule.

47. [Adult Cousin] has not made arrangements for any of the follow-up medical care that was recommended when Child was discharged from Forbes Regional Hospital.

48. There is a free health clinic that provides health care to the Latino immigrant community. Child has received some services from this clinic. The clinic can sometimes arrange for

appointments with specialists who donate time to the health clinic.

49. Although Child has received some services from the free clinic, he did not attend any appointments there from the end of summer 2014 to April 2015. Because Child was not attending the free clinic regularly, no appointments with specialists occurred there prior to the initiation of these proceedings.

50. While exploring options to ensure that Child received his needed health care, Casa San Jose staff learned that the federal Office of Refugee Resettlement ("ORR") offers a form that parents can sign before a notary to authorize another adult to obtain health care for their child.

51. Casa San Jose did not attempt to pursue this option with Child's parents, because [Adult Cousin] is not reliably available to take Child to needed appointments. [Adult Cousin] has directly stated as much to Casa San Jose staff on more than one occasion.

52. It is also difficult for [Adult Cousin] to bear full responsibility for Child's health care because of language barriers and because of [Adult Cousin's] limited experience with obtaining regular medical treatment of any kind.

53. [Adult Cousin] plans to return to Guatemala by the end of 2015.

54. Ms. Melinda Sala, attorney for the Allegheny County Health Department, attended the first day of this hearing and brought with her Child's records of treatment from the TB clinic. Ms. Sala stated that she was unable to release Child's records in response to a subpoena she received because she could not determine who functions as Child's legal guardian. However, Ms. Sala was willing to submit the records directly to this Court, and the Court accepted the records so submitted.

55. Ms. Laurel Phillips, CYF Supervisor, testified credibly that she was unable to obtain Child's records from his treatment at Forbes Regional Hospital.

**Child's Care and Treatment in Guatemala:**

56. There is no medical care available in Child's town in Guatemala. The nearest doctor is five hours away by bus.

57. Child received a set of basic immunizations in Guatemala when he was young.

58. Other than his immunizations, Child has never received routine health care in Guatemala and has never seen a doctor there.

59. The medical care Child needs for his TB is not available to him in Guatemala.

60. Mother would not be able to provide adequate care for Child if he were to return to her care.

61. Child left Guatemala to travel to the United States approximately two years ago, when Child was 15 years old.

62. Mother provided Child with some money for the trip in order to buy food. However, Mother sent Child on the trip by himself, not accompanied by any adult.

63. Child's trip to the United States required two or three days of walking to reach the desert.

64. Child then needed to cross the desert and continue through Mexico to reach the United States.

65. The trip from Guatemala to the United States is quite dangerous.

66. Child's family lives in extreme poverty in Guatemala. The area where the family lives is not safe. There is gang activity there. Kidnappings are not uncommon. The area is quite isolated and receives little government assistance.

## II. Procedural Background.

On April 22, 2015, Petitioner Casa San Jose filed an Application to File Private Dependency Petition, Petition for Dependency, and Request for Special Immigrant Juvenile Status

with this [c]ourt. On May 13, 2015, the [c]ourt conducted a hearing on Petitioner's application and determined Petitioner alleged sufficient facts to support a petition for dependency.[4] During the hearing, the [c]ourt granted an oral motion by CYF to intervene,[5] determined that Petitioner was not a party to the proceedings,[6] and determined that Adult Cousin was a party and had a right to be represented by counsel.[7]

The [c]ourt held a two-day adjudicatory hearing on the petition on May 15, 2015 and May 22, 2015. Following the conclusion of the hearing, the [c]ourt determined Child was dependent pursuant to subsections (4) and (1) of the Juvenile Act. The [c]ourt's order to that effect was entered on the docket on May 26, 2015.

In addition to the issue of dependency, the [c]ourt heard testimony during the adjudicatory hearing on Petitioner's request to determine Child's eligibility to pursue Special Immigrant Juvenile ("SIJ") status. SIJ is a federal immigration status available to foreign children in the United States who have been abused, abandoned, or neglected.[8] To obtain SIJ status, a child must first apply to a state court for an order finding that he or she meets the statutory and regulatory requirements.[9] Second, he or she must submit a petition to U.S. Citizenship and Immigration Services, which makes the final immigration decision.[10] In this matter, the [c]ourt found that Child met the eligibility requirements to apply to the federal government for SIJ status because he is under 21, unmarried, a dependent child, and because reunification with his parents is not viable due to neglect and it is not in his best interest to return to Guatemala. The [c]ourt's order to that effect was entered on the docket on May 26, 2015.[11]

The [c]ourt proceeded to a dispositional hearing on May 27, 2015. A final dispositional order was entered on May 30, 2015.[12] On June 25, 2015, CYF filed both a timely notice of appeal of that order and a motion for reconsideration.[13] On June 29, 2015, the [c]ourt granted CYF's motion for reconsideration and later scheduled a status conference for August 19, 2015 to discuss with counsel the merits of the May 30, 2015 final order. The Superior Court quashed CYF's appeal on August 13, 2015 because this [c]ourt's June 29, 2015 order granting reconsideration rendered the appeal inoperative.[14]

_____

[3] Order of Adjudication, ¶12-66 (May 22, 2015). As discussed in Section III (B), the [c]ourt found some facts relevant to Child's dependency and some relevant to Child's eligibility to apply to the federal government for special immigrant juvenile status.

[4] The [c]ourt made this finding pursuant to Pa.R.J.C.P. No. 1321(a)(2).

[5] Tr. 2:19-3:12, 12:5-23 (May 13, 2015).

[6] The [c]ourt made this finding pursuant to Pa.R.J.C.P. No. 1321.

[7] Adult Cousin is a party to the dependency proceedings because the dependency petition called into question his care and control of Child. **See** Part 111.D below.

[8] SIJ is an immigration status under the Immigration Act of 1990, as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), and codified at 8 U.S.C. § 1101(a)(27)(J).

[9] 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 284.11 (this regulation must be read in conjunction with the 2008 amendments to 8 U.S.C. § 1101, as the regulation has not been updated to reflect those amendments).

[10] **_See generally_**, **Special Immigrant Juvenile Status: Information for Juvenile Courts**, U.S. Citizenship an Immigration Services, http://www.uscis.gov/sites/default/files/USCIS/Green%20Card/ Green%20Card%20 Through %20a%%20Job/Information_for_Juvenile-Courts—Final.pdf, alternatively may be linked through http://www.uscis.gov/green-card/special-immigrant-juveniles/speciall-immigrant-juveniles-sij-status (last visited November 13, 2015).

[11] **_Compare_** Order of Special Immigrant Juvenile Status Eligibility (May 22, 2015), **_with_**, 8 U.S.C. § 1101(a)(27)(J) (SIJ status statutory requirements), **_and_** 8 C.F.R. § 204.11 (SIJ status regulatory requirements).

[12] ***See In Re: C.A.M.***, 399 A.2d 786 (Pa. Super. 1979) (dependency adjudication is appealable after both a determination of dependency and a disposition of the child).

[13] CYF earlier appealed Adult Cousin's standing to participate in the dependency proceedings. That appeal was quashed as untimely on July 15, 2015. ***See*** 913 WDA 2015 (docketed June 12, 2015).

[14] ***See*** Pa.R.A.P. 170! and accompanying notes.

***See*** Trial Court Opinion, 11/20/15, at 2-8.

This timely appeal followed. CYF filed a concise statement of errors on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, CYF raises the following issues:

1. Whether the trial court erred as a matter of law when it proceeded with the adjudication hearing without proper notification to parents?

2. Whether the trial court erred as a matter of law when it granted [Adult Cousin] standing to participate as a party in the Juvenile Dependency proceeding?

3. Whether the trial court abused its discretion when it adjudicated [Child] dependent when there was insufficient evidence presented to support a finding of dependency?

4. Whether the trial court abused its discretion and/or erred as a matter of law when it considered and relied on testimony presented solely for the purpose of determining whether the child meet[s] Special Immigrant Juvenile Status and used that testimony as findings of fact for an adjudication of dependency?

CYF's Brief, at 4.[2]

_____

[2] We note that CYF stated its issues somewhat differently in its concise statement, and it changed the order of the issues. In its first and second issues, respectively, as framed in its concise statement, CYF asserted that

The relevant standard and scope of review in child dependency matters is as follows.

> We accept the trial court's factual findings that are supported by the record, and defer to the court's credibility determinations. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule [the trial court's] findings if they are supported by competent evidence.

*In re R.P.*, 957 A.2d 1205, 1211 (Pa. Super. 2008) (citations and quotations omitted) (brackets in original). We must accept the trial court's factual findings if they are supported by competent evidence. *See In the Interest of J.O.V.*, 686 A.2d 421, 422 (Pa. Super. 1996). This Court is not bound by the trial court's inferences or conclusions of law. *See In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

The proper standard of review in dependency cases is abuse of discretion. *See id*. "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will,

---

the trial court abused its discretion by adjudicating Child dependent when there was insufficient evidence presented to support a finding of dependency under 42 Pa.C.S.A. § 6302(1) and (4), and that the trial court erred as a matter of law by adjudicating Child dependent when there was no competent evidence presented on the record to support the allegations as alleged in the private dependency petition. We find the issues preserved for our review.

discretion has been abused." **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111

(Pa. Super. 2007) (citations omitted).

Section 6302 of the Juvenile Code defines a "dependent child" in as

one who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.] . . .

(2) has been placed for care or adoption in violation of law;

(3) has been abandoned by his parents, guardian, or other custodian;

(4) is without a parent, guardian, or legal custodian;

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

(6) has committed a specific acts or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision;

(7) is under the age of ten years and has committed a delinquent act;

(8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6);

(9) has been referred pursuant to section 6323 (relating to informed adjustment), and who commits an act which is defined as ungovernable in paragraph (6);

(10) is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child.

42 Pa.C.S.A. § 6302.

This Court has clarified the definition of "dependent child" further.

The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

*In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (internal quotations and citations omitted).

Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *Id*. (citation omitted).

With regard to a dependent child, this Court has explained that

[a] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re D.A.*, 801 A.2d 614, 617 (Pa. Super. 2002) (*en banc*) (citation omitted).

First, CYF contends that the trial court erred as a matter of law when it proceeded with the adjudicatory hearing without proper notice to the parties, in contravention of the Pennsylvania Rules of Juvenile Court Procedure.

With regard to the notice issue, CYF contends that the trial court failed to comply with the rules regarding the service of notice on the parties, particularly Child's parents. CYF cites Pennsylvania Rules of Juvenile Court Procedure 1331, and 1360 and 1360(C).

With regard to service to parties, Rule 1331 states:

A. Copy.  Upon the filing of a petition, a copy of the petition shall be served promptly upon the child, the child's guardian, the child's attorney, the guardian's attorney, the attorney for the county agency, and the county agency.

Pa.R.J.C.P. 1331. The comment to the Rule instructs that if the parent is not the child's guardian the parent is still to receive service of the petition.

Rule 1360 directs that the court "shall issue a summons compelling all parties to appear for the adjudicatory hearing." Pa.R.J.C.P. 1360. **See also** 42 Pa.C.S.A. § 6335. The requirements for the summons are as follows:

C. Requirements. The summons shall:

(1) be in writing;

(2) set forth the date, time, and place of the adjudicatory hearing;

(3) instruct the child and the guardian about their rights to counsel, and if the child's guardian is without financial resources or otherwise unable to employ counsel, the right to assigned counsel;

(4) give a warning stating that the failure to appear for the hearing may result in arrest; and

(5) include a copy of the petition unless the petition has been previously served.

Pa.R.J.C.P. 1360(C).

Rule 1361 of the Pennsylvania Rules of Juvenile Court Procedure also mandate the provision of an Adjudicatory Notice to the parties, and that the serving party show proof of service by filing an affidavit of service. If the serving party does not file an affidavit of service, then "the serving party shall advise the court of what efforts were made to notify a person. The court may proceed to a hearing upon a showing of reasonable efforts to locate and notify all persons pursuant to Rule 1360." Pa.R.J.C.P. 1363(D).

Prior to commencing the adjudicatory hearing, the trial court is required to ascertain whether the notice requirements of Rules 1360 and 1361 were met. **See** Pa.R.J.C.P. Rule 1406(A)(1)(a).

The trial court addressed the notice issue as follows.

CYF complains that the [c]ourt should not have proceeded with the adjudicatory hearing because the Petitioner failed to formally notify Parents of the petition. The [c]ourt questions whether CYF is the appropriate party to raise this issue. Mother waived notice through her counsel,[39] and Father has not appealed. The [c]ourt does not see how CYF was prejudiced by the [c]ourt's decision to proceed. Assuming the Superior Court wishes to address this

- 16 -

issue, the [c]ourt will briefly discuss its reasons for moving forward with the adjudicatory hearing:

The Rules of Juvenile Court Procedure allow the [c]ourt to conduct an adjudicatory hearing if reasonable efforts have been made to notify the parties of the proceeding.[40] Here, the Petitioner admittedly failed to provide notice to Parents.[41] The [c]ourt addressed this problem by instructing counsel to make phone contact with Parents between the first and second days of the adjudicatory hearing.[42] This effort to provide notice succeeded. Mother participated fully in the second day of the adjudicatory hearing. The [c]ourt located and arranged for an interpreter capable of communicating with Mother and also made appointed counsel immediately available.

As Mother credibly testified, although Father lives in the same household with Mother, he is away looking for work for most of every month, was away at the time of the hearing and was unable to participate.

It became apparent from Mother's testimony that circumstances would not likely have permitted any other form of notice. Parents do not receive mail in their village, and Mother's testimony supports the conclusion that they do not receive mail at all. The internet is not available. Mother does not read or write any language and speaks only Chuj, a rare Mayan dialect.[43] Under these circumstances, the actual telephonic notice provided seems both reasonable to the [c]ourt and more effective than delivery of a written copy of the petition that Mother could not have read.

For these reasons, the [c]ourt felt reasonable efforts were made to notify Parents of and involve them in the adjudicatory hearing.[44]

_____

[38] Tr. 45:1-47:23, 60:10-62:15, 64:16-67:4, 71:22-79:5 (May 15, 2015) (sorting relevance of testimony); 35:6-36:7, 47:17-49:17, 55:23-56:19, 57:14-58:9 (May 22, 2015) (sorting relevance of testimony); 113:9-121:18 (May 22, 2015) (explaining disposition).

[39] Tr. 103: 10-18 (May 22, 2015).

[40] Pa.R.J.C.P. No. 1363.

[41] Tr. 112:25-113:14 (May 15, 2015).

[42] Tr. 175:14-176:24 (May 15, 2015); Tr. 6:6-7:22 (May 22, 2015).

[43] Tr. 53:11-55:7 (May 22, 2015) (reading and writing); Tr. 175:18-176:24 (May 15, 2015) (Chuj dialect).

[44] The Court is not aware of any case law guidance regarding the adequacy of efforts to provide notice of a dependency proceeding since the Rules of Juvenile Court Procedure for Dependency Matters became effective in 2007. Previous case law does not even recognize an obligation to make reasonable efforts to locate and provide notice to an absent parent. *Cf*. *In re J.C.*, 603 A.2d 627 (Pa. Super. 1992) (holding that County agency need not make "reasonable" efforts to locate absent, noncustodial parent whose whereabouts are unknown prior to obtaining finding of dependency). The [c]ourt suggests that it is wise to leave discretion to trial courts to determine what is reasonable in the context of the specific circumstances an individual case presents. Here, the [c]ourt was faced with a child who had been out of his parents' care for almost two years and who had not received medical care recommended six months earlier. While the [c]ourt must and does respect a parent's custodial rights, the [c]ourt must not risk a child's well-being in so doing. The [c]ourt believes it exercised discretion reasonably under these circumstances.

Trial Court Opinion, 11/20/15, at 15-16.

Importantly, the trial court found that Mother, through her counsel, waived notice and testified at the hearing. Father was out of town and unavailable, and does not challenge the provision of notice to him or the adjudication and disposition order in any way. We agree, and find no abuse of the trial court's discretion in holding the hearing despite the failure of CYF

to strictly adhere to the notice provisions of the Pennsylvania Rules of Juvenile Court Procedure and the Juvenile Act under the circumstances of the instant case.

Next, we address CYF's second issue, alleging Adult Cousin's lack of standing to participate as a party to the proceedings. CYF argues that the Pennsylvania Rule of Juvenile Court Procedure dictate the procedure necessary for a non-party to gain party status as follows.

Rule 1133. Motion to Intervene

**A. Contents.** The motion to intervene shall include:

(1) the name and address of the person moving to intervene;

(2) the relationship of the intervening person to the child;

(3) the contact between the child and the intervening person;

(4) the grounds on which intervention is sought; and

(5) the request sought.

**B. Action by court.** Upon the filing of a motion to intervene and after a hearing, the court shall enter an order granting or denying the motion.

Pa.R.J.C.P. 1133.

We agree with CYF that our case law establishes that, where the child in question has a legal custodian, it is the care being given to the child in question at the time of the filing of the dependency petition that is the focus

of the Juvenile Act, not whether the Child previously experienced an abandonment by his natural parents.

"[T]he Juvenile Act focuses on the care and control afforded a child, regardless of the status of the provider: natural parent, foster parent, or parent substitute." *In re L.J.*, 691 A.2d 520, 526 (Pa. Super. 1997). *See also In re Michael Y.*, 530 A.2d 115 (Pa. Super. 1987). Thus, we have instructed that a legal custodian is treated on par with a parent for purposes of the dependency inquiry, and should be included in the proceedings.

In fact, this Court further stated that

[a]lthough the Juvenile Act does not define "party," case law from this Court has conferred the status of party to a dependency proceeding on three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue[;] or (3) the person whose care and control of the juvenile is in question. . . . These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. 42 Pa.C.S.A. §§ [sic] 6351. Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings. . . .

*In re L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006) (citations omitted).

The trial court provided the following reasoning.

[T]he Superior Court recognizes three classes of persons as having standing in dependency proceedings:

(1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose

- 20 -

dependency status is at issue, or (3) the person whose care and control of the juvenile is in question.[45]

Here, Adult Cousin falls squarely into the third class because the Private Dependency Petition directly called into question his care and control of Child. Specifically, the petition alleged:

> [Adult Cousin] has brought [Child] to his monthly appointments at the Allegheny County Health Department TB Clinic but hasn't followed up on any of the other needed care. [Child] should be receiving care to check the stability of his spine as well as appointments to check that the medication isn't damaging his vision.[46]

CYF did not dispute that these allegations raised the issue of the adequacy of Adult Cousin's care. Rather, CYF argued that the petition did not question Adult Cousin's care because petitioner failed to check the line for subsection (1) on the form petition that Petitioner used.[47] This argument elevates form over substance and merits no relief. Rule 1126 of the Rules of Juvenile Court Procedure instructs a trial court not to dismiss a matter because of a defect in form unless the court is notified of the defect prior to the adjudicatory hearing **and** the defect is prejudicial to the rights of a party. Here, CYF timely notified the [c]ourt of the alleged defect by filing its May 14, 2015 Emergency Motion for Reconsideration. CYF, however, failed to establish that it suffered any prejudice because of this defect.[49]

Furthermore, the [c]ourt's recognition of Adult Cousin as a person with party standing fell within the scope of the [c]ourt's duty to protect the rights of litigants who come before it. Section 6337 of the Juvenile Act grants parties in juvenile matters the right to be represented by counsel.[50] The section further requires the [c]ourt to ascertain whether an unrepresented party appearing before the [c]ourt is aware of this right.[51] It seems clearly inherent in this duty to notify parties of their right to counsel that the [c]ourt has a corresponding duty to determine whether an unrepresented person appearing before the [c]ourt is a party who should be informed of this right. [52]

Because the adequacy of Adult Cousin's care and control of Child was challenged in the Private Dependency Petition, the [c]ourt appropriately recognized his standing to participate as a party in the adjudicatory hearing.

_____

[45] CYF Emergency Motion for Reconsideration, ¶ 4 (May 14, 2015) (citing *In re L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006)).

[46] Private Dependency Petition, 3 (April 22, 2015).

[47] Tr. 20:2-14 (May 15, 2015), Subsection (4) was the only line checked on the form petition. Private Dependency Petition, 2 (April 22, 2015).

[48] Pa.R.J.C.P. 1126.

[49] Prejudice might have occurred had petitioner failed to mention in the text of the private dependency petition that Adult Cousin failed to provide Child with adequate parental care and control, leaving other parties unable to anticipate that claim when preparing to litigate the adjudicatory hearing. *See*, *e.g.*, *In re R.M.*, [567 Pa. 646, 653-655, 790 A.2d 300, 305 (2002)] (due process requires that a dependency petition provide a "reasonable factual specificity" of the facts of the matter(s) so that a party may adequately prepare a response and defense).

[50] 42 Pa.C.S. § 6337.

[51] *Id.*; *see also*, Pa.R.J.C.P. 1406(A)(1)(b)(requiring the court to determine whether unrepresented parties have been informed of their right to counsel under 42 Pa.C.S. § 6337). The Superior Court has held that a Court's failure to advise an unrepresented party of this right is grounds for reversal. *See*, *In re Manuel*, 566 A.2d 626 (Pa. Super. 1989) (couple, whose care and control of child was in question, did not waive right to counsel when trial court failed to advise couple of their right to counsel and couple failed to affirmatively waive their right on the record).

[52] While no affirmative duty to determine party status appears in the Juvenile Act or the Rules of Juvenile Court Procedure, this means of fulfilling the [c]ourt's required duties under Section

6337 comports with the purpose of the Juvenile Act. **See**, **e.g.**, 42 Pa.C.S. § 6301(b)(4) (identifying one purpose of Act as "[to provide means through which the provisions of [the Juvenile Act] are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced").

Trial Court Opinion, 11/20/15, at 17-18.

We find no abuse of the trial court's discretion in finding that Adult Cousin had standing to participate as a party to the proceedings, as a caregiver of the juvenile child whose care and control was in question under the circumstances of the instant case.

Next, we address the fourth issue raised in CYF's brief. CYF complains that the trial court allowed testimony, over the objection of CYF's counsel, regarding the conditions Child experienced in Guatemala for purposes of making a finding with regard to SIJ status. CYF asserts that the trial court then used the testimony as facts to establish Child's dependency under 42 Pa.C.S.A. § 6302(1) and (4). CYF claims that the trial court erred as a matter of law and abused its discretion when it considered evidence and relied on testimony presented solely for determining whether Child met SIJ status in its findings of fact for an adjudication of dependency.

The trial court provided the following reasoning with regard to this issue.

In this matter, Petitioner Casa San Jose requested both an adjudication of dependency and findings necessary to permit Child to apply to the federal government for special immigrant juvenile status.[35] The [c]ourt found that Child meets the

eligibility criteria for SIJ status and entered an order to that effect following adjudication.[36]

On appeal, CYF does not challenge the [c]ourt's order regarding Child's eligibility for SIJ status.[37] CYF complains only that the [c]ourt mistakenly relied on testimony related to Child's request for SIJ eligibility findings to support the [c]ourt's conclusion that Child is a dependent child. This complaint lacks merit. The [c]ourt properly considered facts relevant to dependency when adjudicating Child dependent and considered facts relevant to SIJ status when finding Child eligible to apply for SIJ status.

For purposes of judicial economy, the [c]ourt heard testimony related to dependency and SIJ status during the same proceeding. The [c]ourt's decision to do so did not differ from common practice in proceedings without juries where the court serves as finder of fact. For instance, in dependency matters, the [c]ourt frequently hears testimony on adjudication and disposition in the same hearing. Similarly, in termination of parental rights matters, the [c]ourt frequently hears testimony on grounds for termination and the child's needs and welfare in the same hearing. Just as in those cases, this [c]ourt considered all admissible evidence, sorted it, relied on the portions relevant to dependency to make the dependency determination, and relied on the portions relevant to SIJ to make the SIJ determination. Furthermore, the [c]ourt took considerable and specific care to distinguish the testimony relevant to dependency from the testimony relevant to SIJ status during the hearing, during the [c]ourt's announcement of its ruling on the record, and in the written findings of fact contained in the order of adjudication.[38]

For these reasons, CYF is mistaken about the [c]ourt's application of the facts and the Superior Court should affirm.

_____

[35] **See generally**, Private Dependency Petition (April 22, 2015).

[36] **See**, Special Immigrant Juvenile Status Eligibility, CP-02-DP-0000797-2015 (May 22, 2015).

[37] While this court is not aware of any published decisions by the Superior Court regarding how *Pennsylvania* trial courts should handle requests for SIJ status findings, state appellate courts have addressed the interplay between the federal immigration process and state juvenile courts. ***E.g.***, ***H.S.P. v. J.K.***, 121 A.3d 849 (N.J. 2015); ***see also***, **Special Immigrant Juvenile Status: Information for Juvenile Courts**, *supra* fn. 10.

Trial Court Opinion, 11/20/15, at 14-15 (footnotes in original).

"Questions concerning the relevancy of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion." ***Sprague v. Walter***, 656 A.2d 890, 907 (Pa. Super. 1995) (citation omitted).

After careful review of the record in this matter, for the reasons set forth by the trial court, we find no abuse of the trial court's discretion in allowing testimony, over the objection of CYF's counsel, regarding the conditions Child experienced in Guatemala for purposes of making a finding with regard to SIJ status in this matter.

Finally, we address CYF's third issue: whether there was insufficient evidence upon which to find Child dependent. CYF asserts that there was no evidence to support a finding that Child is dependent under § 6302(4) of the Juvenile Act, regarding lack of a parent, guardian, or legal custodian. With regard to its finding of dependency under § 6302(4), the trial court provided the following reasoning.

> The Juvenile Act rests on the recognition that children are vulnerable and the state has an obligation to protect them.[19] This obligation includes ensuring that children are in the legal

custody of a responsible adult. Unlike adults, children cannot legally take care of and provide for themselves. Unless emancipated, children generally cannot enter contracts, rent an apartment, enroll themselves in school, or apply for public benefits. Children are limited in their capacity to obtain employment and control bank accounts. When a child is sick, that child generally cannot provide consent to be treated.[20] The law expects adults, typically parents, to exercise legal authority on behalf of children.

Given the importance of the legal role adults play on behalf of children, the General Assembly wisely included children who lack such a responsible adult within the Juvenile Act's definition of "dependent child."[21] Thus, when a child lacks a parent, guardian, or legal custodian and comes to the attention of the state, the [c]ourt can rectify the situation by adjudicating the child dependent and awarding temporary legal custody to a qualified individual, a licensed agency, or a public agency such as CYF.[22] Adjudication on this basis does not require proof that the Child has suffered some specific harm, or faces some future harm. The General Assembly recognized that the mere lack of a parent, legal custodian, or guardian itself warrants the state's intervention.

In this matter, Child does not have a responsible adult available to exercise legal authority on his behalf. It was undisputed that Adult Cousin is not Child's legal custodian, and that a prior guardianship was no longer in effect.[23] While Child does have living parents ("Parents"), they are not present in Allegheny County, or in the Commonwealth of Pennsylvania, or in the United States of America. Parents live in a small Guatemalan village, some 1,800 miles away from Allegheny County. Mother testified that Parents do not receive mail and do not have access to the internet. Mother testified she might be able to receive mail if it was sent to the next village, which is a five to six hours from Parents' home.[24] Even phone communication with Parents is difficult, as Parents only speak Chuj. Chuj is a 2,000 year-old rare Mayan dialect spoken by 43,000 people worldwide.[25] Court staff and administration worked diligently to locate and secure qualified Chuj interpreters for this matter, none of whom reside in Pennsylvania. These circumstances make it effectively impractical and impossible for

Parents to exercise legal authority on behalf of Child here in Allegheny County.[26]

These facts by themselves and without anything more, warranted an adjudication of dependency. As discussed above, adjudication under subsection (4) does not require proof that the lack of a legal custodian has caused or will cause the Child harm. Even though this evidence was not necessary for adjudication, the [c]ourt heard ample testimony during the hearing to conclude that Child has been harmed by his lack of a legal custodian. When Child was hospitalized in November 2014 at Forbes Regional Hospital for tuberculosis of the spine, the hospital could only provide Child with emergency care because Child lacked a legal custodian to consent to additional medical treatment.[27] While the hospital successfully had a temporary guardian appointed for Child, the evidence at the hearing demonstrated that the temporary guardian failed to exercise appropriate and necessary legal authority following Child's discharge from the hospital. The county health department followed up with Child's tuberculosis treatment, but the temporary guardian failed to facilitate or provide consent for Child's other necessary follow-up medical care.[28] Child also nearly was refused a simple blood draw at the county tuberculosis clinic.[29]

Given the above, the [c]ourt properly concluded that Child lacks a parent guardian, or custodian -- a status the General Assembly clearly recognized as warranting an adjudication of dependency.[30]

_____

[19] **See generally**, 42 Pa.C.S. § 6301(b).

[20] **Cf.** Minors' Consent Act, 35 P.S. § 10101 et seq. (allowing minors to consent to their own medical treatment in limited circumstances).

[21] 42 Pa.C.S. § 6302(4) ('dependent child' includes a child who "is without a parent, guardian, or legal custodian").

[22] 42 Pa. C.S. § 6351(2).

[23] Tr. 113:18 - 114:13 (May 15, 2015).

[24] Tr. 40:11-43:10 (May 22, 2015).

[25] *See*, *e.g.* M. Paul Lewis, Gary F. Simons & Charles D. Fennig, Ethnologue: Languages of the World, Chuj (18th ed. 2015), available at http://www.ethnologue.com/language/cac.

[26] The record reflects no attempt by Parents to exercise legal decision-making authority on behalf of Child since they sent him to the U.S. in 2013. Even when Child was hospitalized, the record reflects no effort by Parents to act, or to explore possible ways to delegate their legal decision-making authority to some other responsible adult.

[27] Minors' Consent Act, 35 P.S. § 10104.

[28] The parties stipulated that "Forbes Regional Hospital recommended cardiology, neurology, and orthopedic as follow upon discharge" and that the follow-up care did not occur. Tr. 30:14-31:18 (May 22, 2015).

[29] Tr. 147:25-150:10 (May 15, 2015) (Casa San Jose staff explaining difficulty in ensuring Child could have his blood drawn because no one present at appointment had legal authority to consent for the procedure).

[30] This Court is unaware of any case law discussing the scope or application of subsection (4) of the definition of "dependent child". For the reasons given, this Court believes subsection (4) provides the basis for adjudication that most accurately matches Child's circumstances. However, if the Superior Court is not inclined to provide guidance on subsection (4) at this time, this Court would suggest that the circumstances also support an adjudication based on subsection (1). Parents' failure to even attempt to exercise legal decision-making authority to help Child receive necessary medical treatment in the U.S. demonstrates their inadequate parental care or control of Child.

Trial Court Opinion, 11/20/15, at 10-12.

After careful review of the record in this matter, for the reasons set forth by the trial court, we find no abuse of the trial court's discretion in

finding that Child was dependent for lack of a parent, guardian, or legal custodian under section 6302(4) of the Juvenile Act.

CYF also asserts that there was no evidence to support a finding that Child is dependent under § 6302(1) of the Juvenile Act, regarding lack of necessary parental care or control. With regard to its finding of dependency under § 6302(1), the trial court provided the following reasoning.

> If the only basis for Child's dependency had been lack of a legal custodian, the [c]ourt could have adjudicated Child dependent and awarded temporary legal custody to Adult Cousin.[31] However, the evidence presented during the adjudicatory hearing also clearly demonstrated Child was dependent pursuant to subsection (1) because Child's caregiver, Adult Cousin, failed to provide Child with adequate care and control.

> Child's caregiver in the United States is Adult Cousin. While Adult Cousin has taken Child to most of his tuberculosis appointments, he failed to schedule or arrange appointments for necessary follow-up care related to concerns about Child's spine, heart murmur, and vision problems.[32] Casa San Jose staff, who attend appointments with Child and Adult Cousin to help translate, testified credibly that Child has missed medical appointments because of Adult Cousin's work schedule and that Adult Cousin has failed to schedule and arrange follow-up treatment for Child.[33]

> Well-settled case law establishes that the question of whether a child is dependent due to lack of proper parental care or control encompasses two discrete questions: "whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available."[34]

> Here, Child lacked proper care or control from Adult Cousin because of Adult Cousin's failure to provide or obtain necessary health care. The, [c]ourt quite reasonably found that such care was not immediately available from Parents. Parents live 1,800

miles away in Guatemala and were clearly not available to assume immediate custody of Child.

_____

[31] 42 Pa. C.S. § 6351(a)(2).

[32] The parties stipulated that the recommended follow-up care did not occur. Tr. 30:14-31:18 (May 22, 2015).

[33] Tr. 109;2-112:7 (Casa San Jose Supervisor, Sister Janice); and, Tr. 155:15-156:7 (Casa San Jose Staff Member, Grace Muller).

[34] *In re D.A.*, 801 A.2d 614, 619 (Pa. Super. 2002).

Trial Court Opinion, 11/20/15, at 13-14.

After careful review of the record in this matter, for the reasons set forth by the trial court, we find no abuse of the trial court's discretion in finding that Child was dependent for lack of a parent, guardian, or legal custodian under § 6302(1) of the Juvenile Act.

In the May 30, 2015 order, the trial court found that it is not in Child's best interests to be removed from the United States and returned to Guatemala. The trial court resolved the issue of dependency in this case in accordance with its obligation to determine the best possible result for Child to insure that his long-term physical needs and essential medical care will be met. The trial court's decision to determine dependency and allow for Child to have an appointed caregiver allows the caregiver to make important medical decisions for Child. The record presented clear and convincing evidence of dependency as a matter of law, as Child was without a parent or

legal guardian who can provide for his needs and well-being. Accordingly, we affirm the order of the trial court.[3]

Order affirmed. Motion to quash denied.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2017

---

[3] Adult cousin filed a motion to quash the appeal, arguing that CYF is not an aggrieved party and that its Rule 1925(b) statement was too vague to permit review. We summarily deny the motion.